UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 DEC -1  P 3:42

US D...

| | |
|---|---|
| WOODMAN DESIGN GROUP, INC. | |
| Plaintiff, | Civil Action No. 3:01 CV-2029 (SRU) |
| v. | |
| THE HOMESTEADS OF NEWTOWN, L.L.C., MORTON SILBERSTEIN, LINDA SILBERSTEIN, and ARBOR COMMERCIAL MORTGAGE L.L.C. | |
| Defendants. | DECEMBER 1, 2003 |

### ARBOR COMMERCIAL MORTGAGE L.L.C.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Woodman Design Group, Inc.'s ("Woodman Design") opposition to Arbor Commercial Mortgage LLC's ("Arbor") motion for summary judgment demonstrates that Arbor is entitled to summary judgment on each and every one of Woodman Design's claims because Woodman Design completely fails to establish any material disputes of fact that would preclude the entry of summary judgment for Arbor. As set forth in more detail below, in a desperate attempt to avoid summary judgment, Woodman Design relies on supposition, Arbor's alleged failure to respond to letters that were not even addressed to Arbor, and incomplete summary testimony, which when examined *in toto* support Arbor's position. More importantly, Woodman Design completely fails to address the governing loan documents, HUD regulations and laws that govern the transaction. Woodman Design compounds its failure by failing to address much of the case law cited by Arbor in support of its motion. The result is clear – the undisputed facts and the law as applied to those facts mandate the entry of summary judgment for Arbor.

I.   **<u>Woodman Design's Promissory Estoppel Claim Must Be Dismissed</u>**

Woodman Design cannot establish any of the elements of its promissory estoppel claim. The record demonstrates that Woodman Design can establish no "clear and definite" promise; no reasonable reliance; no forbearance on its part as a result of any alleged promise; and no injustice or damages.

   A.   **Woodman Design cannot establish a "clear and definite" promise.**

Woodman Design makes three arguments to support its contention that a dispute of fact exists as to whether Arbor promised that Woodman would be paid in full on release of the bond proceeds. First, Woodman Design cites to a portion of Ellen Burkhardt's deposition wherein she summarily testified that "there was no dispute whatsoever that Guy Milone represented to [her] repeatedly in phone conversations" that Woodman Design would be paid in full once the operating deficit bond was released. *See* Opposition at 12. Unfortunately for Woodman Design, however, Ms. Burkhardt's deposition did not end with her summary contention. Instead, her summary recollection was explored in detail. Ms. Burkhardt was asked to explain what was specifically said in each conversation. Ms. Burkardt's specific testimony as to the "repeated" conversations makes clear that Woodman Design cannot establish that Arbor made any promise that Woodman Design would be paid once the Bond Proceeds were released. *See* Arbor Motion for Summary Judgment ("MSJ") at 13-22. Indeed, Ms. Burkhardt in essence admitted that no agreement existed when she explained why she failed to document the agreement she now alleges exists:

   Q.   I still do not understand why you wouldn't put that in there. Were you trying to sandbag him?

   *   *   *

   A.   No, no. I was trying to be clean and succinct and just – he asked for this.

2

> Q. What would not be succinct about stating, as we discussed, we are being paid $150,000 now, and we will be paid the balance when the bond released?
>
> A. **And what if he said, I don't want that in writing. Then where am I? I don't have any money for my client.**
>
> Q. Then you know you don't have an agreement, don't you?
>
> A. **And I also don't have any money. My theory was that if he wasn't going to pay us in August, we go take the furniture. All we are doing is not taking the furniture for a month. It's not life threatening.**

*Id.* at pp. 110-11. (Emphasis added). Ms. Burkhardt also testified that she did not document the agreement because she did not want to "spook" Mr. Milone. *Id.* at 107-08. An individual who makes an "undisputed" and "clear and definite promise" is not spooked when that promise is documented. While Ms. Burkhardt may have wished in her heart of hearts that she had a deal, she knew that Mr. Milone had not made a promise upon which she could rely. She, therefore, intentionally did not document the alleged promise she now contends was made.

Woodman Design next argues that because Ms. Burkhardt testified that HUD told her that the use of the operating deficit escrow was getting "revisited and rethought" that she could ignore all of HUD's earlier representations to her that her client could not be paid out of the operating deficit escrow bond. *See* Opposition at 13. Woodman Design's position reeks of desperation. As of August 7 – almost one month *after* Mr. Milone's alleged promise – HUD was still telling Ms. Burkhardt that her client could not get paid out of the operating deficit bond proceeds.[1] *See* Arbor MSJ at 22.

Woodman Design's third argument is that the *release* of the bond proceeds would facilitate payment to Woodman Design – not that Woodman Design would be paid out of the

---

[1] Moreover, the uses to which the operating deficit fund can be put are limited by the loan documents.

3

bond proceeds. Woodman Design has to ignore entire swaths of Ms. Burkhardt's testimony to make such an argument, including the testimony just cited above regarding the "revisiting" of payment from the initial operating deficit bond.

**B.    Woodman Design did not reasonably rely on any promise by Arbor.**

Woodman Design completely fails to address case law which holds Ms. Burkhardt to a higher standard because she is a lawyer. Woodman Design fails to address Arbor's argument that payment of Woodman Design out of the initial operating deficit escrow account would have violated HUD regulations. Those arguments, therefore, are conceded and Arbor need go no further on the reliance element. Nevertheless, Arbor will address the remaining arguments that Woodman Design attempts to make.

First, Woodman Design repeats its argument that HUD's position on whether Woodman Design could be paid out of the operating deficit escrow account was "fluid" and was being "revisited." Opposition at 14. As already discussed above, however, Ms. Burkhardt's mere hope that HUD might somehow decide to reconsider whether her client could be paid out of the operating deficit account cannot constitute reasonable reliance. The conclusion that such reliance is unreasonable is further bolstered by the fact that such a payment would violate HUD regulations.[2] Woodman Design follows its argument with its recently created afterthought that Woodman Design could have been paid out of the original loan proceeds even though there is no testimony by Ms. Burkhardt to that effect – indeed all her quoted testimony explicitly shows that her unreasonable reliance was upon a payment from the operating deficit escrow.

---

[2]    As also noted above, HUD did not allegedly tell Ms. Burkhardt that it was "revisiting" the issue until *after* Mr. Milone allegedly made the promise upon which Ms. Burkhardt allegedly relied. Woodman Design's position, therefore, is nonsensical.

4

In response to Arbor's argument that neither HUD nor Arbor were in a position to determine whether Woodman Design properly performed its contract with Woodman, Woodman Design glibly responds that Newtown never articulated its specific concerns and posits that Woodman Design and Newtown had allegedly agreed to meet to resolve the dispute. Woodman Design misses the point. The dispute was not resolved. HUD never authorized any payment of any disputed amounts and Arbor could not make any such payments – whether or not Woodman Design thought the dispute lacked merit or was on the cusp of resolution.

### C. Woodman Design cannot establish that any promise by Arbor induced it to take any action.

Arbor noted in its summary judgment motion that Woodman Design's threats to exercise self-help were empty and void because it could not legally exercise self-help. *See* Arbor MSJ at 27-28. Woodman Design, therefore, cannot establish that Arbor's alleged promise induced it not to take action. In any event, Connecticut courts will not enforce through promissory estoppel an agreement which violates the law. Woodman Design does not dispute the points of law raised by Arbor. Instead, it contends that any action for repossession could have involved a judicial action. *See* opposition at 15. Unfortunately, no support exists in the record for Woodman Design's newfound position. Ms. Burkhardt testified:

> I am not a UCC expert, but technically we owned it, Woodman owned it.... So technically Woodman could have backed a truck up to the building and loaded it all up and taken it away, not a solution anyone was really wild about, but that seemed the only thing we might be able to do. And further along, as you have seen, there are letters talking about setting the stage for that.

*See* Exhibit 7 to Arbor's MSJ, Burkhardt deposition at 31. *See also, id.* at 36-37, 82-83. Woodman Design threatened to roll trucks up to the Newtown facility and take away the furniture – nothing more, nothing less. Its threatened actions violated Connecticut law and any agreement based on the threats are unenforceable.

**D.    Woodman Design cannot establish any damages or injustice.**

Woodman Design suffered no damages. Ms. Burkhardt confirmed in deposition that, in her view, she could have taken the furniture in August after the stand-still expired. Woodman Design confirmed that it could not establish any diminution of value in the furniture between July and August. In fact, Woodman Design was $150,000 better off than it had been before July 11, 2001. Woodman Design does not and cannot dispute those simple facts. Woodman Design's response is simply that it "expected" to be paid the balance it was owed – even though that amount was never established. Woodman Design also appears to argue that it is unfair that Arbor was paid pursuant to a guarantee under a HUD program while Woodman Design was not. To put it simply, Arbor was not a party to Woodman Design's contract with Newtown. Woodman Design has remedies against Newtown - an issue that is separate and distinct from whether or not Woodman Design suffered damage *as a result of any alleged promise made by Arbor*.

**II.    Woodman Design's Misrepresentation Claim Must be Dismissed.**

Although the elements for a claim of misrepresentation are similar to promissory estoppel, Woodman's burden of proof is higher since it must establish its claim by clear and satisfactory evidence. Woodman Design completely fails to address three of the four elements of its claim. Woodman Design does not address Arbor's argument that it suffered no damages because there was no diminution in value of the furniture between July 11 and August when the standstill expired. Woodman Design also fails to address Arbor's argument that Woodman Design was in a better position at the expiration of the stand-still because it had been paid $150,000. In addition to the damages arguments, Woodman Design fails to address Arbor's

6

reasonable reliance argument or the fact that Woodman Design had no legal right to self-help repossession. Woodman Design cannot establish the elements of its misrepresentation claim.[3]

### III. Woodman Design's Unfair Trade Practice Act Claim Must Be Dismissed.

In order to maintain an Unfair Trade Practice claim Woodman Design must establish a deceptive or unfair trade practice and damages resulting from that practice. Woodman Design has failed to establish either element in its opposition. With respect to damages, Woodman Design simply alleges that "the landscape had changed" in the few weeks that it agreed not to drive off with the furniture. Opposition at 22. Woodman Design's argument is specious and contrary to the record. First, Woodman Design testified that it *could not* establish any diminution of value of the furniture. *See* Arbor MSJ at 28. Second, Woodman Design never had a right to drive off with the furniture in any event, a fact conceded by Woodman Design. For that reason alone, Woodman Design's Unfair Trade Practice claim fails.

Woodman Design's attempt to establish a potential deceptive trade practice is also unavailing. Woodman Design identifies ten allegedly deceptive practices in bullet point form in its opposition. Most of the items are either irrelevant or pure speculation.

First, Woodman Design contends that Arbor knew as of March that the furniture had been delivered. Arbor, however, was merely the lender in a HUD insured transaction. The owner did not agree to any payment whatsoever until May when it submitted a partial request on

---

[3]   For the first time, Woodman Design also attempts to assert a claim for negligent misrepresentation against Arbor. The analysis of the claim is essentially the same. Woodman Design cannot establish a promise, reasonable reliance, a change in position on its part or damages.

7

the wrong form.[4] By that time, the loan was in default and Arbor could not advance any funds under the loan documents.

Second, in its second and third bullet points, Woodman Design speculates that Arbor played "cat and mouse" regarding the partial requisition. The timeline and loan documents, which are both set forth in detail in Arbor's motion for summary judgment, belie Woodman Design's claim. *See* Arbor MSJ at 1-23.

Third, Woodman Design argues that Arbor's contention that a lien prohibited payment to Woodman Design was belied by the fact that a payment of $150,000 was eventually made. Woodman Design's argument is disingenuous at best. The loan documents are clear. Arbor cannot advance funds once the loan is out of balance. *See* Arbor MSJ at 2-6. Arbor's payment of any funds while the loan is out of balance could result in HUD's refusal to insure the monies advanced. *Id.* at 4. The payment to Woodman Design was made at HUD's specific request after Woodman Design threatened HUD. The payment in no way reflects Arbor's obligations under its agreement with HUD.

Fourth, Woodman rehashes its estoppel argument in the next two bullet points. Those allegations have been dealt with extensively in the motion for summary judgment and this reply.

Fifth, in a series of three bullet points, Woodman Design complains that Arbor "maneuvered" to be paid interest on the loan. It is undisputed that Arbor was due interest on the loan. Failure to pay interest would have been another event of default under the loan.

---

[4] Woodman Design, incredibly, also complains that Arbor did not respond to a letter addressed to someone else, on which Arbor was merely copied. *See* Opposition at 4.

Newtown's obligation to make payments to Arbor under its loan agreement has nothing to do with Newtown's dispute with Woodman Design over the furniture Woodman installed.[5]

Finally, Woodman Design raises an irrelevant issue that occurred long after the alleged promises that Woodman Design contends caused it to be damaged. Specifically, Woodman Design argues that Arbor failed to attach $333,000 which was allegedly in an "operating deficit account" during the initial period of this litigation (before the Massachusetts state court). Opposition at 21. Woodman is wrong. First, the very document Woodman Design cites to demonstrates that there is no account. The document, a memo to HUD sent in conjunction with the assignment of the mortgage, states: "[a] surety bond ($1.25M) for operating deficits has a current balance of $333K left for disbursement." *See* Woodman's opposition, Exhibit 23. The surety bond, however, is not an Arbor account and is not controlled by Arbor. The surety bond was issued for the benefit of HUD and is an agreement by a surety company to fulfill an obligation to fund an account for the benefit of HUD. *See* Surety bond, Arbor MSJ, Exhibit 2. Woodman Design's argument is specious.

## IV. **Woodman Design's Breach of Contract and Implied Covenant Claims Fail.**

Without any citation to the record, Woodman Design alleges that an "explicit, oral agreement" was reached regarding "the use of the bond proceeds." *See* Opposition at 23. Arbor has already demonstrated in its motion for summary judgment and this reply that no agreement was reached. The fragile nature of Woodman's argument to the contrary is exposed in Woodman Design's own opposition. Seeking to excuse one of the many failures of Ms. Burkhardt to document an alleged agreement, Woodman Design acknowledges that the

---

[5] Interest on the loan after the facility opens is obviously an operating expense, which is why it was paid out of the initial operating deficit escrow.

9

situation was fluid, a direct contradiction of its earlier assertion of an explicit agreement: "Ms. Burkhardt's decision was eminently reasonable, particularly in light of the fluid discussions she knew Arbor was pursuing with HUD regarding the uses of the operating deficit bond." *See* Opposition at 23. Woodman Design mutates the alleged agreement to serve its own purposes and to avoid the fact that there was no agreement.

As previously noted, Woodman Design's contract claim also fails because the consideration – forbearance from an illegal act – is not enforceable. Woodman's post hoc rationalization that other remedies hypothetically existed cannot save the claim since those afterthoughts were not part of the alleged agreement at the time Ms. Burkhardt threatened HUD.

Woodman Design simply notes, with no independent analysis, its belief that the implied covenant claim should not be dismissed. Because Woodman Design has no valid contract claim and because Woodman Design did not establish the elements of its implied covenant claim, Arbor is entitled to summary judgment on that claim.

## V. Woodman's Tortious Interference with Contractual and Business Relations Claim Cannot Survive Summary Judgment.

Woodman Design acknowledges that the loan documents govern the transaction. Opposition at 24-26. Its sole basis for opposing summary judgment on the tortious interference claim is an assertion that Arbor has not shown that the loan was in default or out of balance. *Id.* Woodman Design is wrong. Arbor established the default through several documents in its motion for summary judgment. *See* Arbor MSJ at 11-12.

## VI.  Woodman Design's Breach of Fiduciary Duty Claim Fails.

Arbor was only a lender enforcing the terms of its agreement. Arbor had no relationship with Woodman Design. In the face of those facts, Woodman Design stretches and speculates to try to establish a special relationship.

Woodman first contends that the loan documents "earmarked" funds for Woodman. Opposition at 26. A review of the loan documents, however, reveals that the loan documents itemized how all loan proceeds were to be used. *See* Arbor MSJ at 4-5. A designation of what funds are to be used for does not create a fiduciary relationship. If such a designation creates a fiduciary relationship, then every lender that extends a home equity loan for an addition to a house becomes a fiduciary to the contractor. Such a result is ridiculous.

Woodman Design also contends that it was restrained in its ability to seek security. The alleged restraints, however, were imposed by HUD not Arbor. Under Woodman Design's theory, is HUD Woodman Design's fiduciary as well?

Moreover, the alleged "restraints" related only to disbusement of loan proceeds. Woodman Design could have required Newtown to pay for the services Woodman Design provided directly without regard to any loan. Woodman Design made its own business decisions.

Woodman Design also contends that Arbor played a "particularized role in overseeing payment to vendors." Opposition at 26. Arbor's role, however, was limited to reviewing documents and requisitions for compliance with the loan documents. Again, Arbor was simply enforcing the loan documents.

Finally, Woodman Design Argues that Arbor had some control of the funds paid out of the operating deficit escrow. Woodman Design is wrong. All operating deficit fund payments

were controlled by HUD and paid pursuant to HUD's instructions. Ms. Burkhardt recognized that fact in her discussions with Mr. Milone. Woodman Design's allegations of a special relationship, therefore are nothing more than smoke and mirrors.

For the foregoing reasons, summary judgment should be granted to Arbor on all Woodman Design's claims.

Dated: December 1, 2003

Respectfully submitted,

Arbor Commercial Mortgage, LLC

By its attorneys,

/s/ M. McCann

Martin L. McCann,
Federal Bar No. ct 11725
ZELDES, NEEDLE & COOPER
1000 Lafayette Boulevard, P.O. Box 1740
Bridgeport, Connecticut 06601-1740
(203) 333-9441 (fax) 333-1489

Constantinos G. Panagopoulos
Federal Bar No. ct 23552
Jeffrey W. Larroca
BALLARD SPAHR ANDREWS &
 INGERSOLL, LLP.
601 13th Street, N.W., Suite 1000 South
Washington, D.C. 20005-3807
202-661-2200 (fax) 202-661-2299

## CERTIFICATE OF SERVICE

I, Martin L. McCann, hereby certify that a true and correct copy of Arbor Commercial Mortgage LLC's reply to motion for summary judgment and memorandum of points and authorities in support thereof were mailed first-class, postage prepaid on this 1st day of December, 2003, to:

>Brian Whitely, Esq.
>Scibelli and Whiteley, LLP
>189 State Street, Sixth Floor
>Boston, Massachusetts 02109
>
>Marc P. Mercier, Esq.
>Beck and Eldergill, P.C.
>447 Center Street
>Manchester, Connecticut 06040
>
>Patricia W. Boatman, Esq.
>Boatman, Boscarino, Grasso and Twachtman
>628 Hebron Avenue
>Building Three
>Glastonbury, Connecticut  06033

_____
Martin L. McCann